# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN

DOC NO
REG:S
FILED
2021 JAN -7  PM 4:58
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

GNAMIEN MOMOU,

Plaintiff,

v.

United States of America-Attorney General of
the United States,

US Attorney for the Western District of
Wisconsin,

SSM   HEALTH   CARE   CORPORATION;

DEAN HEALTH PLAN INC.

SSM HEALTHCARE OF WISCONSIN, INC. DBA
SSM HEALTH ST. MARY'S HOSPITAL,

Hackman Sarah, MD

Lee, Peter J, MD,

Hernandez Santiago, MD

Defendants.

Case No.  20-CV-00014

Jury Trial Demanded

---

Amended Complaint for Damages and Notice of Appeal. Relief demanded

Plaintiff Gnamien Momou brings this Complaint and notice of Appeal against Defendants SSM Health Care Corporation, Dean Health Plan Inc. and SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's Hospital (jointly referred to as "Defendants"). This action in appeal points the court to a tort claim (federal question) already submitted in court by plaintiff. It is to plaintiff's belief that the court has authority to rule on federal questions. The claim will be filed as soon as possible in State court. Plaintiff seeks compensatory and punitive damages, monetary restitution, equitable relief, and all other available remedies because of injuries and wrongful death caused by Defendants' Medical Malpractice and mental anguish, emotional distress, loss of enjoyment of life, fear, anxiety, and shock sustained by Plaintiff 'wife and plaintiff himself taking care of his wife. Plaintiff suffered. He makes the following allegations based upon his personal knowledge and upon information and belief, as well as upon his investigative efforts, regarding Defendants' Medical Malpractice (unwarranted and botched biopsy).

PARTIES

1. Plaintiff Gnamien Momou, primary caretaker of his wife was born in 1964 and married to Hortense Momou born in 1969 and died in 2020. Gnamien and Hortense Momou are citizen of the United States and originally from the Ivory Coast. Hortense Momou was diagnosed with ovarian cancer on or around August 19, 2016 and referred to Defendants for treatments. Plaintiff Gnamien Momou is a resident and citizen of Dane County in the State of Wisconsin.

2. Defendant, SSM Health Care Corporation provides health care services. SSM Health Care serves patients in the United States. It is a Missouri institution located at 1173 Corporate Lake Drive Saint Louis, MO 63132 United States.

3. SSM Health Care Corporation is engaged in offering cardiology, pediatrics, oncology, emergency care, orthopedic surgery, rehabilitation, pain management, behavioral health,

2

4. SSM Health Care Corporation is a Missouri corporation with its principal place of business in the State of Missouri. SSM Health Care Corporation may be served with process by serving its registered agent in Madison Wisconsin at CT Corporation's Wisconsin office located at 301 S Bedford St, Suite 1, Madison, WI 53703.

5. At all relevant times, upon information and belief, SSM Health Care Corporation was engaged in the business of in offering cardiology, pediatrics, oncology, emergency care, orthopedic surgery, rehabilitation, pain management, behavioral health, cardiovascular medicine, transplant, and digestive health services. At all relevant times, SSM Health Care Corporation regularly transacted, solicited, and conducted business across the United States and in the State of Wisconsin.

6. At all relevant times, Defendants SSM Health Care Corporation, Dean Health Plan Inc. and SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's Hospital (jointly referred to as "Defendants") were engaged in the business of in offering cardiology, pediatrics, oncology, emergency care, orthopedic surgery, rehabilitation, pain management, behavioral health, cardiovascular medicine, transplant, health insurance and digestive health services. At all relevant times, SSM Health Care Corporation and the above entities regularly transacted, solicited, and conducted business across the United States and in the State of Wisconsin testing, licensing, sale, distribution, marketing and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities.

7. Defendants Dean Health Plan Inc. and SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's Hospital has been at all relevant times wholly owned subsidiaries of Defendant SSM Health Care Corporation, under the complete dominion of and control of Defendant SSM

Health Care Corporation. Hereinafter, unless otherwise delineated, these entities together shall be referred to as the "SSM Health Defendants."

8. Dean Health Plan is the insurance services subsidiary of Dean Health System and SSM Health Care. Dean Health Plan is a diversified HMOs in the Midwest and provides insurance services through a physician-led integrated health system that improves the health status of its members and delivers a superior level of service and care. Products include HMO and freedom-of-choice insurance plans for commercial and individual customers, Medicare and Medicaid programs and third-party administrator services.

JURISDICTION AND VENUE

Plaintiff Gnamien Momou sues the defendant United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b), for injuries and death caused to plaintiff's decedent, Hortense Momou, by the Defendants.

9. An administrative claim will be timely presented to the U.S. Department of Health & Human Services.

10. This court has jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b).

11. This Court has jurisdiction over the plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 as an action raising a federal question.

12. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure and injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

FACTUAL ALLEGATIONS

4

13. At all relevant times, Defendants have provided care to patient under Medicare and Medicaid, and as a result this court has jurisdiction over this case. President Johnson signed the Social Security Act in 1965. The Act included the provision of Medicare to provide hospitalization and other health benefits to Americans over 65 years of age.

Employee Retirement Income Security Act of 1974

14. Healthcare Quality Improvement Act of 1986

The Healthcare Quality Improvement Act was enacted to encourage physicians to file official complaints after encountering unprofessional and dangerous conduct by other doctors. The act also to protects medical professionals from lawsuits by doctors who have been reported for malpractice. Title IV of Public Law 99-660. This court has jurisdiction over this case.

H.R.2. CHIP Reauthorization Act 2009

15. Hospital Readmissions Reduction Program

The Hospital Readmissions Reduction Program is designed to improve patient care by reducing payouts to hospitals that experience excessive patient readmissions. Meaning, the hospital is penalized if patients are sent home and end up back in the hospital within 30 days, unless the patient has heart failure, pneumonia, or multiple health conditions. Based on it, this court has jurisdiction over this case.

HRRP 2012

16. Under HIPAA, insurance companies are forbidden to refuse to cover an applicant due to health problems. Sometimes, if an insurance company denies a worker's application, the person is allowed to apply for coverage outside of the normal enrollment period. HIPAA 1996

Patient Safety and Quality Improvement Act of 2005

17. The Patient Safety and Quality Improvement Act protects health care workers who report unsafe conditions. PSQIA was created to encourage workers to report medical errors while protecting patients' privacy.

42 CFR Part 3

18. Affordable Care Act of 2010

Rolled out in 2010, the Affordable Care Act, also known as "ObamaCare," is intended to require every American to carry health coverage. While the provisions penalizing uninsured individuals have been removed, important parts of the act continue. For example, insurance companies are no longer allowed to deny coverage or drop coverage for persons with pre-existing medical conditions.

19. The Act expanded Medicaid coverage for low-income individuals and provided subsidies based on income for qualifying persons enrolled in Marketplace plans.

HR 3590 Public Law 111-148

20. Plaintiff believes that defendants received benefits in a form of grants by the Federal government to provide medical, surgical, dental, or related functions and as a result are under the Federal Tort Claims Act (FTCA) for damage, for personal injury, including death, resulting from the performance of medical, surgical, dental, and related functions, which is exclusive of any other civil action or proceeding. 25 U.S.C. § 450f. Based on it, this court has jurisdiction over this case.

21. Overview of Liver Biopsy

At all relevant times, a feasible and safe alternative to liver biopsy has existed. For example, a biopsy means removing a sample of your cells or tissue and looking at it under a microscope. This is usually the only way to be certain whether a growth is cancer or not. With liver cancer, doctors can often diagnose it just from looking at the scans and so you may not need to have a

biopsy. You usually will not have a biopsy if there is any chance your surgeon thinks they can remove your tumor, or that you might benefit from a liver transplant. This is because there is a small risk that a liver biopsy could spread the cancer along the pathway of the biopsy needle. It is important to avoid this risk if it has not already spread.

22. At relevant times, Dean Health Plan have advertised nationwide physician referrals: "Always contact your primary care provider first. If he or she determines that you should be seen by a specialist, one will be sought within the Dean Health Plan network of providers. There are numerous area medical specialists affiliated with Dean Health Plan, including but not limited to SSM Health Dean Medical Group, one of the largest multispecialty clinics in the nation."

23. "If you have a problem that cannot be addressed by a plan provider, prior authorization from Dean Health Plan will be required. Your primary care provider will help you obtain a written referral to see a specialist who fits your needs."

24. At relevant times, the Dean Health Plan Defendant advertised and marketed: "You need a written referral request when your Dean Health Plan physician recommends that you receive services from a non-plan provider.

25. Your Dean Health Plan network physician will request that the referral be reviewed by Dean Health Plan. You and the non-plan physician will receive written confirmation of approval or denial of the requested services.

26. Services received without prior authorization may be denied and would be the responsibility of the Dean Health Plan member. https://www.deancare.com/our-company/q-a/hmo-plan/

27. At relevant times, health insurance companies have prioritized profit over healthcare. Access to quality healthcare is vitally important to maintaining a high quality of life. Yet the cost of care in the U.S. has skyrocketed in recent years and continually places a greater strain on the budgets of individuals, businesses, and the federal government. Spending on healthcare in the United States accounts for over 17% of GDP, or more than $2.7 trillion and growing. Health insurance premiums have risen in lockstep as carriers attempt to recoup ever-higher costs, making it even more difficult for individuals and small businesses to get the coverage they need.

28. At relevant times, hospitals have hired unqualified personnel: "Just when you thought you'd heard everything about the poor quality of care in our absurdly overpriced health system, something else comes along. Today, it arrived in the form of a report from the HHS Office of The Inspector General (OIG). This report observes that unqualified non-physicians perform many clinical services, including invasive procedures." https://www.cbsnews.com/news/oig-slams-doctors-for-using-unqualified-personnel/

PERSONAL JURISDICTION

29. Serving a summons usually creates jurisdiction over a defendant. But, this general rule only applies to the court's general jurisdiction in the state where that district court is located, was joined under certain federal rules and is served within a judicial district that is within 100 miles from the place where the summons was issued or when a federal statute authorizes such service. If the claim is for one that arises under federal law, personal jurisdiction is created if the defendant is not subject to general jurisdiction in any state court and if such exercise of jurisdiction is consistent with the laws of the United States.

30. In Tyrrell v. BNSF Railway Co., 2016 MT 126, 383 Mont. 417, 373 P. 3d 1 (2016), the Court also concluded that Montana could not exercise personal jurisdiction over BNSF, on claims that did not arise in Montana, consistent with the federal Constitution as the Court had interpreted it in Daimler. In our case, our claim arises in Wisconsin.

31. The Court's decision in that case establishes that a state may exercise "general" personal jurisdiction over a corporation if the corporation is "at home" in that state. A corporation is deemed to be at home in its state of incorporation and the state in which it maintains its principal place of business, but BNSF is incorporated in Delaware and has its principal place of business in Texas. While Daimler recognized that a corporation might be found to be "at home" and subject to general jurisdiction in another state in "exceptional circumstances," there were no such circumstances here. BNSF Railway Co. v. Tyrell, 137 S. Ct. at 1558-59.

32. Using the Long-arm statute. A long-arm statute is a statute that allows for a court to obtain personal jurisdiction over an out-of-state defendant on the basis of certain acts committed by an out-of-state defendant, provided that the defendant has a sufficient connection with the state. Typically, all that has been shown here is that the injury occurred within the state of Wisconsin for Plaintiff to establish that he had "substantial contact" with that state. This court has long-arm jurisdiction.

33. My wife was diagnosed of stage 4 ovarian cancer in 2016 at the emergency clinic on 2840 O'Keeffe Ave. Sun Prairie, WI 53590. Her primary care physician referred her to the Carbon Center at the UW Health. We were reassured by her oncologist that she needed a surgery involving the removal of reproductive organs. Dean Health Plan refused to cover the cost of the surgery and

therefore we were sent to their location on 1200 John Q Hammons Dr Suite 400, Madison, WI 53717 for Chemotherapy infusion contrary to her plans at the Carbon Center.

34. My wife had the right to impartial access to medical treatment or accommodations, regardless of race, national origin, handicap, or in this matter here source of payment and religion.

35. She had the right to treatment for any emergency medical condition that will deteriorate from failure to provide such treatment in a timely manner.

36. She had the right to access any mode of treatment that is, in his or her own judgment and the judgment of his or her health care practitioner, in her best interests.

37. She nearly died from the chemotherapy infusion at 1200 John Q Hammons Dr Suite 400, Madison, WI 53717. Her hemoglobin levels went down to a critical 5 grams per deciliter given the subsequent drug infusions. And the responsible physician kept administering infusions despite the dangerous level of hemoglobin.

38. She was sent to St Mary's Hospital in Madison for a Liver Biopsy again contrary to the initial plan at the Carbon Center.

39. The physician who performed the biopsy did a pour work. He went and slice open cancer mass into her abdomen resulting in profuse bleeding. My wife complained of internal bleeding. They sent her to the intensive care unit where she spent days to recover. She nearly died.

40. More, she subsequently developed additional metastasis, fluid buildup in her abdomen. And despite the later surgery completed under the auspices of quartz health insurance she passed away on March 5th 2020.

41. It is crystal clear that the medical negligence caused some injury that would not have otherwise occurred.

42. Had the doctor, nurse or hospital acted in accordance with acceptable medical standards, my wife would not have suffered the injuries and death she suffered.

As the husband I did not signed anything giving them permission.

43. I have suffered and continue to do so.

44. Dean Health Plan and SSM Health St. Mary's Hospital may have seen an opportunity to bypass patient care (ie initial plans at the Carbon Center, causing delays).

45. We have incurred unnecessary expenses and suffering. WHEREFORE, plaintiff Gnamien C Momou is claiming a judgment for money to the maximum allowable by law or what the jury may deem necessary for relief.

FIRST CLAIM FOR RELIEF (Medical Negligence)

46. Plaintiff incorporates Paragraphs 1 through 45 herein by reference.

47. Defendants was negligent in his care and treatment of Hortense Momou.

With respect to his care and treatment of Hortense Momou.

48. Defendants owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

49. Defendants deviated from the standard of care and was negligent in his care and treatment of Hortense Momou by:

    a.  Failing to transfer Hortense Momou to a medical facility with the appropriate

capabilities following his evaluations at SSM Healthcare of Wisconsin, Inc. Dba SSM

Health St. Mary's Hospital;

50. Failing to ensure that Hortense Momou received follow up liver CTs;

51. Failing to ensure that Hortense Momou received appropriate liver

evaluations during her medical care.

52. Failing to order a follow up CT promptly.

53. Failing to recognize the urgent nature of Hortense Momou's condition after

evaluations at Hospital;

54. Failing to prevent, timely diagnose and effectively treat, including, but not limited to,

Hortense Momou hemorrhage.

55. As a direct and proximate result of the negligence of Defendants' Physician,

Hortense Momou has suffered significant and permanent injuries and damages including

permanent physical and emotional stress, mental anguish and physical suffering. Hortense

Momou's injuries require around the clock medical care. Her injuries have been disabling

and humiliating. The injuries she has suffered are permanent leading to her death. Plaintiff

has been forced to spend monies for medicine, doctors' fees, prescriptions, hospital care,

x-rays, physical therapy, medical procedures, rehabilitation, educational care and long-

term care and assistance. Plaintiff, Gnamien Momou, has suffered a loss of ability to enjoy

a full useful and normal life. Plaintiff has suffered family care services past and future. All

as a direct and proximate result of the negligence of Defendants inflicting injury resulting

in the death of his wife.

56. Plaintiff, Gnamien Momou, will suffer future economic damages as a result of injury and loss of Hortense Momou, emotional distress, mental anguish, and physical suffering. Hortense Momou's injuries require that she receive around the clock medical care.

57. Plaintiff has suffered and will continue to suffer economic damages for the extraordinary medical, psychological, life care, and essential service expenses associated with his wife injuries, death as well as non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life.

58. As a direct and proximate result of the negligence of Defendants,

59. Plaintiff will suffer future economic damages, has suffered past economic damages.

60. He will suffer future non-economic damages, has suffered past non-economic damages, Plaintiff, will make a claim for all costs and interest allowable under applicable law.

SECOND CLAIM FOR RELIEF

61. (Medical Negligence – SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's Hospital)

62. Plaintiff incorporates Paragraphs 1 through 62 herein by reference.

63. At all relevant times, SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's Hospital had nursing personnel and hospital administrators who were employees, agents, officers, shareholders, or partners of SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's Hospital who were acting within the scope of their employment or within their authority for SSM Health Care Corporation.

64. Defendants are responsible for the acts or omissions of its employees, agents, officers, directors, shareholders and/or partners including the nursing personnel and hospital administrators who were involved in providing services in connection with caring for

Hortense Momou during her admission.

65. Defendants acting by and through its employees, agents, partners, officers and directors including, but not limited to, hospital administrators, registered nurses,

66. certified nursing assistants, nurse practitioners, licensed practical nurses and other employees, all of whom were acting within the course and scope of their employment or within their authority as agents and employees of SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's Hospital, were negligent in their care and treatment of

67. Plaintiff's wife, including, but not limited to, the following:

68. Failing to properly perform appropriate nursing assessments on Hortense Momou;

69. Failing to recognize the urgent medical condition of Hortense;

70. Failing to follow applicable policies and procedures;

71. Failing to activate the chain of command;

72. Failing to take appropriate vital signs for Hortense Momou;

73. Failing to communicate the urgent condition of Hortense Momou;

74. Failing to ensure that Hortense Momou was transferred in a timely fashion to a hospital with the appropriate medical capabilities;

75. Failing to ensure that received the appropriate imaging studies;

76. Hemorrhages without the ability to perform critical medical procedures, Failing to develop and implement adequate policies and procedures and

77. failing to ensure that the hospital staff was following policies and procedures;

   i.   Failing to adequately hire, train and supervise hospital staff;

   j.   Failing to have in place an adequately safe system.

78. Failing to ensure that Hortense Momou received appropriate evaluations during and after her biopsy;

k.   Failing to ensure that it offered medical services commensurate with the needs of its patient population; Failing to advise Hortense Momou and her family that there were problems. Failing to advise family of the option of transferring Hortense Momou to a different medical facility such as UW Hospital and Clinics where she was initially referred to; and Failing to have a system in place to prevent, timely diagnose and effectively

79. Treat Plaintiff's wife medical conditions, including, but not limited to, Hortense Momou hemorrhage.

80. Plaintiff, has been forced to spend monies and will spend monies in the future for

81. medicine, doctors' fees, prescriptions, hospital care, x-rays, physical therapy, medical

82. procedures, rehabilitation, educational care and long-term care and assistance. Plaintiff, has suffered a loss of ability to enjoy a full useful and normal life. Plaintiff, has sufferGnamien Momou.

83. All as a direct and proximate result of the negligence of Defendants, especially SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's Hospital.

84. and will continue to suffer economic damages

85. past disfigurement and physical impairment damages. Plaintiff, Laurence Niles, will make

86. WHEREFORE, Plaintiff, Gnamien Momou respectfully prays for compensatory damages

87. in his favor and against Defendants in an amount to be determined by the trier of fact, interest

88. from the date of filing, pre-judgment and post-judgment interest as allowed by law, witness fees,

89. filing fees, deposition expenses, attorneys fees if possible, and for such other and further relief as the Court

90. may deem appropriate and just including all costs.

PLAINTIFF DEMANDS A TRIAL BY JURY

18. Default of Defendant SSM Healthcare of Wisconsin, Inc. Dba SSM Health St. Mary's

Citations of Defendants in his replies were not complete but partial. Signing an affidavit mean that you are willing to testify to the truthfulness of the statement in front of the court. It would also mean that you are mentally and emotionally fit to do so. The agreement referred to by defendants and presented in court for court decision in favor of defaulted SSM Healthcare of Wisconsin, Inc. dba SSM Health St. Mary's Hospital is unknown by plaintiff. The agreement was not mailed, emailed by defendant to plaintiff Gnamien Momou as asserted in affidavit by defendant. Defendant has yet to prove to the truthfulness of the statement in affidavit before the court. Again, plaintiff did not handwrite "amended" on the waiver of service as filed in court document by defendants. Defendant wrote It.

Emails copies brought out by defendants should not be taken as evidence in court documents or court filings. Statements made emails are under emotions. There is no sworn statement in these emails, no affidavits, no proof of service as to who sent those emails (no video surveillance, no forensic analysis on any hard drives, no email server authentication, no key stroke analysis, no finger prints). Even if it is the case, the agreement filed in court by defendants was not mailed as stated by defendant, emailed by defendant to plaintiff Gnamien Momou as stated by defendant on

affidavit, or agreed upon by both parties as asserted in affidavit or proof of service by defendants. Just sending an email to a party does not represent in itself a contractual agreement in court documents. More is involved. The other party must agree.

The concern is the default. The court should not rely on the mistaken argument of defendant SSM Healthcare of Wisconsin, Inc. dba SSM Health St. Mary's Hospital for not filing a response in time. When a person or corporation does business under a name, that name "is merely descriptive of the person or corporation" and "it does not create or constitute an entity distinct from the person operating the business." Jacob v. West Bend Mut. Ins. Co., 203 Wis. 2d 524, 537 n.7, 553 N.W.2d 800 (Ct. App. 1996).

In Paul Davis Restoration of S.E. Wis., Inc. v. Paul Davis Restoration of Northeast Wis., No. 2011AP1121, unpublished slip op., ¶¶7-9 (Wis. Ct. App. June 12, 2012) we read the following:

"The purpose of a fictitious name statute is to protect the public against false identification of the character of a business by use of certain words in the name employed by the enterprise, or to ensure that those who do business with persons operating under a fictitious name will know the true identities of the individuals with whom they are dealing or to whom they are giving credit or becoming bound. . . . By filing an assumed-name certificate as authorized by statute, a corporation puts the public on notice that it is doing business under an assumed name . . . ."

Considering the above and in virtue of plaintiff's previous fillings it is appropriate to grant plaintiff with the relief he is looking for and deny defendants' pleadings.

Background

Plaintiff Gnamien C Momou called the court on Friday August 14th, 2020 to inquire about the latest documents filed by Mr. Guy Du Beau, the defendants 'attorney. To Mr. Momou's surprise, documents were filed by·defendants on July 28th, 2020. However, these documents were never mailed or made available to him. He received copies of those documents from the court Friday August 14th, 2020 and find out that a certificate of service (Document #40) was also filed by the defendant. As the court knows, a certificate of service certifies that the party filing the document has sent a copy of the document (s) to the opposing party. More, the letter to Honorable William M. Conley (document #38) dated 07/28/20 underlying an agreement between the plaintiff and the defendant SSM Healthcare of Wisconsin, Inc. dba SSM Health St. Mary's Hospital is false and misleading. Such agreement will be unthinkable for Mr. Momou because, plaintiff was not a part of such an agreement as he did not know. And more, given that defendant SSM Healthcare of Wisconsin, Inc. dba SSM Health St. Mary's Hospital has defaulted in Federal Court for failing to appear in court it would be unreasonable for Mr. Momou to relieve the defend from this burden. Therefore, it is appropriate, for plaintiff to wait a decision from the court to grant him the relief he seeks.

Document 38-1 is a forged document. Plaintiff previously filed the document in court and made it available to defendants. Now I have my signature attached to a bran new document filed on 07/28/20 with the word "amended" and the name of defendant SSM Healthcare of Wisconsin, Inc. dba SSM Health St. Mary's Hospital forged into the document. Now, we have a forged decision by the court adversely affecting plaintiff Gnamien Momou. As a result of the foregoing, plaintiff raises in court improper service issues, urges the court to grant Plaintiff's motion for entry of default (dkt. #25), Motion for entry of a default judgment, Motion for a proof hearing to establish

the amount of the judgment against defendant SSM Healthcare of Wisconsin, Inc. dba SSM Health St. Mary's Hospital. Motion to proceed against the defendants who have responded or will respond.

As the affected party, Mr. Gnamien C Momou hereby file a motion to quash service made by defendant on July the 28th 2020 and thereby attach all of the evidence of the improper/ineffective service. And, reiterate Motion to reconsider Plaintiff's motion for entry of default (dkt. #25), Motion for entry of a default judgment, Motion for a proof hearing to establish the amount of the judgment against defendant SSM Healthcare of Wisconsin, Inc. dba SSM Health St. Mary's Hospital. Motion to proceed against the defendants who have responded or will respond. Motion to quash service made by defendant on July the 28th 2020. Further, Plaintiff would like to seek criminal charges for perjury.

Pursuant to WI Stat § 807.12 (2012 through Act 45) and in virtue of Federal Rule of Civil Procedure 15 that allows amendment of pleadings before, during, or even after trial if no prejudice will result, in order to encourage full litigation on the merits of all issues, hereby, encouraging judgment on the merits, rather than procedural requirements, Plaintiff Gnamien C Momou respectfully petitions the court for the following.

Plaintiff Gnamien C Momou would like to supplicate the court to reconsider his motions for entry of default (dkt. #25), Motion for entry of a default judgment, Motion for a proof hearing to establish the amount of the judgment. Plaintiff Gnamien Momou did not receive any information as he was not notified from the court or the defendant about the court's calendar for presenting his arguments on the above motions. This will allow the case to proceed against the defendants who

have responded and allow Plaintiff Gnamien C Momou to collect the judgment issued against the defaulting defendant. Naming defendant SSM HEALTH ST. MARY'S HOSPITAL instead of SSM HEALTHCARE OF WISCONSIN, INC. DBA SSM HEALTH ST. MARY'S HOSPITAL is a misnomer and not a new party as claimed by the defendant. The examples below give us an illustration. In some instances, the court may inquire about cases in different states before deciding. CT Corporation is the registered agent of SSM Healthcare of Wisconsin, Inc. dba SSM Health St. Mary's Hospital. Please see attached the following fully quoted case.

[When a defendant seeks to vacate a default judgment, pursuant to sec. 806.07, claiming improper service of process, the burden of proof is on the defendant.

In so holding, the Wisconsin Supreme Court reversed a published decision of the court of appeals, Richards v. First Union Securities, Inc., 2005 WI App 164, 284 Wis.2d 530, 702 N.W.2d 45, and also reversed the appeals court's holding that a foreign corporation's branch manager was not a "managing agent" for purposes of accepting service.

In July 2002, Gary Richards filed an action in Waukesha County Circuit Court against First Union Securities, Inc., to recover investment losses as the result of alleged violations of the antifraud sections of the Wisconsin Uniform Securities Law.

The next day Richards' process server attempted to serve a copy of the summons and complaint on the defendant by serving Kim Wisniewski (Wisniewski), the operations manager of First Union's Brookfield branch. According to the process server's affidavit, Wisniewski was the person identified as authorized to accept service.

In September, First Union informed Richards that he was required to arbitrate the dispute. Richards consented to stay the court case in favor of arbitration on the condition that First Union initiate the arbitration and pay the filing fee.

However, First Union neither paid the fee nor filed an answer to the complaint. In November, default judgment was granted to Richards.

When First Union failed to pay, Richards began garnishment proceedings. First Union then filed an answer to the garnishment, and a motion to reopen the default judgment. First Union submitted affidavits from both Wisniewski and Ronald McGrath, the branch manager of its Brookfield office. Both stated they were not an officer, director, or managing agent of First Union.

McGrath acknowledged that he was the person in charge of the Brookfield branch office, but claimed that there were no officers, directors, or managing agents of First Union anywhere in Wisconsin, and thus, no one authorized to accept service in the state, except its registered agent.

He further stated that First Union was a foreign corporation, with CSC-lawyers Incorporating Service as its registered agent.

Circuit Court Judge Robert G. Mawdsley denied First Union's motion, concluding that defects in personal service were waived.

First Union appealed, and a divided court of appeals reversed, holding that service was not waived, and that McGrath was not a managing agent.

The Supreme Court accepted review, and reversed the court of appeals, in a unanimous decision by Justice N. Patrick Crooks.

Relying on Emery v. Emery, 124 Wis.2d 613, 369 N.W.2d 728 (1985), and West v. West, 82 Wis.2d 158, 262 N.W.2d 87 (1987), the court held that the burden of proof is on the party seeking to reopen and vacate the judgment.

The court rejected First Union's argument that, because a judgment is void when personal jurisdiction is lacking, there is a special reason to place the burden of defending the judgment on the nonmoving party.

Turning to the merits, the court concluded that, under Carroll v. Wisconsin Power & Light Co., 273 Wis. 490, 79 N.W.2d 1 (1956), further evidentiary proceedings are required to determine whether McGrath is an officer, director, or a managing agent for First Union.

Section 801.11(5)(a) provides that service of a summons on a corporation or Limited Liability Company is achieved: "By personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office."

It was undisputed that Wisniewski was not a managing agent; at issue was whether McGrath was a managing agent, and therefore, service was effective under the alternate service option of sec. 801.11(5)(a), since a copy was left at McGrath's office with Wisniewski.

In Carroll, the Supreme Court considered the predecessor statute, which also allowed service on a "managing agent." The court held that the director of operations at one of thirty generating stations owned by Wisconsin Power & Light was not a managing agent.

Although the director issued requests for supplies, purchases were made by the Madison office. The court held that the term "managing agent" relates "to a person possessing and exercising the right of general control, authority, judgment, and discretion over the business or affairs of the corporation, either on an overall or part basis, i.e., everywhere or in a particular branch or district." Carroll, 273 Wis. at 494.

Because the director of operation's authority was not general, but was limited to the management of the physical operation of one plant and its maintenance, the court held he was not a managing agent.

Looking for guidance, the court turned to a Minnesota case, Derrick v. The Drolson Co., 69 N.W.2d 124, 129 (Minn.1955), in which the court wrote, "the significant factors in determining whether a particular agent is a 'managing agent' for the purpose of receiving service are the extent to which the agent has power to exercise independent judgment and discretion in executing the business of the corporation, and whether his position is of such a character and rank as to make it reasonably certain that the corporation will be apprised of the service."

Calling the decision in Derrick "quite helpful in applying the Carroll test and assisting a circuit court in determining what constitutes a managing agent," the court found that the record in the case at bar was insufficient to determine whether or not McGrath was a managing agent, and remanded the case to the circuit court.]

As outlined above the court may look for guidance in cases out of state to make decision.

"As a general rule[,] the misnomer of a corporation in a notice, summons, or other step in a judicial proceeding is immaterial if it appears the corporation could not have been, or was not, misled."); id. ("The misnomer of a corporation has the same effect as the misnomer of an individual."); Tri-Cty. Ice & Fuel Co. v. Palmetto Ice Co., 303 S.C. 237, 240, 399 S.E.2d 779, 781 (1990) ("[W]here a party is served by a wrong name, and the writ is served on the party intended to be served and he fails to appear and plead the misnomer in abatement, and suffers judgment to be obtained by default against him in the [erroneous] name, he is concluded, and execution may be issued on the judgment in that name and levied upon the property and effects of the real

defendant." (quoting Waldrop v. Leonard, 22 S.C. 118, 126-27 (1885); Sundown Operating Co. v.

Intedge Indus., Inc., 383 S.C. 601, 606, 681 S.E.2d 885, 888 (2009)

Mr. Momou has exhausted the steps required by the court in the state of Wisconsin to be granted

monetary relief up to the 10th of defendant's annual revenue. The law in Wisconsin is unequivocal

and outlined below.

806.02   Default judgment.

(1)   A default judgment may be rendered in favor of any party as provided in subs. (1) to

(4) if no issue of law or fact has been joined on any claim asserted in a complaint, counterclaim,

or cross claim and if the time for joining issue has expired. Any defendant appearing in an action

shall be entitled to notice of motion for judgment.

(2)   After filing the complaint, counterclaim, or cross claim and proof of service thereof

and after filing an affidavit that the party against whom judgment is sought is in default for failure

to join issue, a party may move for judgment according to the demand of the complaint,

counterclaim, or cross claim. If the amount of money sought was excluded from the demand for

judgment, as required under s. 802.02 (1m), the court shall require the moving party to specify the

amount of money claimed and provide that information to the court and to the other parties

appearing in the action prior to the court rendering judgment. If proof of any fact is necessary for

the court to render judgment, the court shall receive the proof.

(3)   If a defendant fails to appear in an action within the time fixed in s. 801.09 the court

shall, before entering a judgment against such defendant, require proof of service of the summons

in the manner required by s. 801.10 and, in addition, shall require further proof as follows:

(a) Where a personal claim is made against the defendant, the court shall require proof by

affidavit or other evidence, to be made and filed, of the existence of any fact not shown by the

complaint which is needed to establish grounds for personal jurisdiction over the defendant. The court may require such additional proof as the interests of justice require.

(b) Where no personal claim is made against the defendant, the court shall require such proofs, by affidavit or otherwise, as are necessary to show the court's jurisdiction has been invoked over the status, property or thing which is the subject of the action. The court may require such additional proof as the interests of justice require.

(4) In an action on express contract for recovery of a liquidated amount of money only, the plaintiff may file with the clerk proof of personal service of the summons on one or more of the defendants and an affidavit that the defendant is in default for failure to join issue. The clerk shall render and enter judgment against the defendants who are in default for the amount demanded in the complaint. As a result of the foregoing,

PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above-referenced claims and causes of action, jointly and severally, as follows:

1. Awarding compensatory damages in excess of $75,000, including, but not limited to pain, suffering, discomfort, physical impairment, emotional distress, loss of

2. enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action

3. Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determined at trial of this action.

4. Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless

acts of the Defendants who demonstrated a complete disregard and reckless

5. Plaintiff hereby urges the court to grant his Motion for entry of default (dkt. #25)

6. Plaintiff hereby urges the court to grant his Motion for entry of a default judgment

7. Plaintiff hereby urges the court to grant his Motion for a proof hearing to establish the amount of the judgment against defendant SSM HEALTHCARE OF WISCONSIN, INC. DBA SSM HEALTH ST. MARY'S HOSPITAL.

8. Motion to quash service made by defendant on July the 28th 2020.

9. Plaintiff hereby urges at the discretion of the court and if it does not hurt his case to grant his Motion to proceed against the defendants who have responded or will be responding.

10. Plaintiff objects to Defendant's personal jurisdiction, subject matter jurisdiction, venue, process, service of process, or misnomer of a party and raises such objections under (Rule 12(h)(1)-(2)).

January 7 2021

Dated: ~~October 9th, 2020~~

Mailed today to defendant in certified mail

Respectfully submitted,

/s/ Gnamien C Momou

Gnamien C Momou
6810 Depot St
Windsor, WI 53598
Tel: (608) 333-8358
E-mail: gnamien_momou@yahoo.com